29530. SHEPHERD v. THE STATE.

DECIDED MAY 13, 1942. REHEARING DENIED JUNE 6, 1942.

*Frank L. Gearreld, J. L. Smith,* for plaintiff in error.
*William Y. Atkinson, solicitor-general,* contra.

GARDNER, J. The defendant was indicted jointly with T. A. Ogletree, the charge being that he "unlawfully did keep, maintain, employ, and carry on a certain scheme and device for the hazarding of money, said device being one called and known as a slot machine." He was tried separately and convicted. His motion for new trial was overruled and he excepted.

The special grounds of the motion assign error on the admission of documentary and parol evidence over objections. If it be said that the objections were meritorious the error was harmless. The brief of evidence as a whole shows that the defendant introduced evidence to the same effect as that to which objections were entered. There is possibly one exception to this statement. The witness G. N. Shepherd testified that he was the owner of the place where the slot machines were alleged to have been operating; that he sold intoxicating liquors there, and he was required to state from whom he purchased such liquors. We think this testimony was admissible as affecting the credibility of the witness. That portion of it which did not go to his credibility we feel could not possibly have prejudiced the defendant's cause. The special grounds are without merit.

As to the general grounds, the evidence was overwhelming that the law against gaming was being notoriously and flagrantly violated at the place in question. Several witnesses, including G. N. Shepherd, the younger brother of the defendant, testified that when he was not present at the gaming house in question, the defendant was in charge of the place. We think this, and other evidence which is set out in detail hereinafter, authorized the jury to find that the defendant was present, aiding and abetting in the commission of the offense charged. After a very careful consid-

eration of all the testimony, we think it was sufficient to sustain a verdict of guilty. We set out below the witnesses for the State and for the defendant, by number, giving in substance the testimony of each which tended in any wise to connect the defendant with the transaction charged:

For the State: 1. Was there once. Never saw defendant at the place. 2. Was there a dozen times. Saw defendant doing various things, mostly in kitchen; seemed to superintend the kitchen. If anything wrong with food, complainant saw defendant; if anything else .wrong complainant saw G. N. Shepherd, brother of defendant, who operates the place. The wife of G. N. Shepherd is the cashier. Four or five people work there. Redirect examination: Did not draw deed to place where County-Line Club located. Checked title to a small tract, about two acres. G. N. Shepherd paid witness to check title. 3. Was there about a dozen times. About twelve slot machines there. Defendant was general supervisor. He saw to food being properly fixed; might say he was the host. Don't know that defendant had any interest in place. Do not know who operated place. 4. Was there three or four times. Know defendant. When there, saw defendant standing at other end of room from machines; standing there before counter or bar. Did not see him exercise any supervision over club. Saw him talk to people when they came near front of room. 5. Know defendant. He was just standing around in front. Don't know who had charge. Do not know whether defendant had any interest or not. 6. Anything wrong with food, complainant called on defendant. He was in kitchen; supervisor. G. N. Shepherd looked after anything wrong with slot machines. Don't know who looked after machines when G. N. not there. Don't recall such an occasion. 7. (Policeman.) Was there four times. Defendant in kitchen except once at counter. Every time saw defendant in kitchen preparing food. 8. Did not see defendant there. 9. (Policeman.) Was there one or two weeks ago. Saw no slot machines. Defendant walked in and slipped on apron as witness was leaving. 10. (Chief of LaGrange police.) Was there about four months ago, around three o'clock. Defendant and four or five negroes in kitchen. Eight or ten slot machines there. Defendant only white person witness saw in charge. Wasn't doing anything. Hadn't opened up. 11. Was there five or six times. Played slot ma-

chines. Defendant was there in charge of kitchen; works there. G. N. (Snooks) Shepherd, brother of defendant, was there. When G. N. Shepherd wasn't there a boy named Lewis was in charge. Defendant superintending cooking. G. N. Shepherd was there every time except one. Defendant was not there then. G. N. was the man in charge; looking after the business and taking in money. 12. Never saw any one play. (Said nothing about defendant.)

For defendant: 1. Called on County-Line Club every Wednesday from LaGrange Grocery Company; sell groceries there. See G. N. Shepherd every Wednesday. Never saw defendant there but once. He was then in yard. Dealt with G. N. Shepherd. He gave orders for groceries and did the paying. Account against G. N. Shepherd. It was opened in his name. 2. Was at County-Line Club four or five times. Saw defendant there around kitchen. Do not recall going there when G. N. Shepherd wasn't there. Noticed him over the house or in kitchen or talking to people coming in, often meeting people at the door. 3. Was there five or six times. Saw and operated slot machines. Saw defendant there around kitchen most of time. When not at kitchen would come out and speak to a fellow he knew sometimes, but usually stayed in the kitchen. 4. Defendant's statement: Defendant worked only as an employee. Had no interest whatsoever in the business. The business belonged to his brother, G. N. Shepherd. 5. G. N. Shepherd, brother of defendant. He was called Snooks. He purchased and owned the County-Line Club. Defendant had no interest in the place at all. Defendant looked after kitchen. Witness purchased back counter. Company would not ship because witness was twenty-seven years old and eligible for the army, therefore his brother, the defendant, signed. Defendant had never had any interest in or control over the operation of the place. Witness purchased and installed the slot machines. Witness started serving food at five or six p. m. He had two cooks and three others who waited on the tables, besides his brother, the defendant, who looked after the kitchen. The five negroes and defendant went before witness to the place. He had no one in charge before he went to the club. "Guess defendant in charge." Defendant watches negroes clean up. Makes them clean up kitchen. They clean big room. Slot machines right along wall of main

room. "Defendant in charge until I get there. Don't serve until I get there." All drinks etc., locked up. Witness installed all slot machines himself. He purchased them in Columbus from J. O. Milford. Witness sold liquor illegally there. He rented building from T. A. Ogletree for $50 per month. He signed purchase-money notes for counters and made down payment. Company refused to ship because witness was eligible for army. Defendant then signed. Witness paid for them. Witness signed contract for other fixtures and paid bills. 6. Lives in Atlanta. Works for Brunswick-Collender Company. Made a contract signed by G. N. Shepherd. Sold property to G. N. Shepherd. He made a down payment of $125. Order was not shipped under this particular contract. Had a wire stating that company couldn't sell to party subject to draft. A new contract was signed by defendant and cash payment was applied to this contract. Dealt with G. N. Shepherd. Never saw defendant before today. Principal amount of contract was $477.09, monthly payments of $14.62. The contract signed by defendant was substituted for the one signed by G. N. Shepherd. G. N. Shepherd was the one witness had all his dealings with. 7. Live in LaGrange. Work for Swift and Company. Went to County-Line Club every week. Made out credit reports. Got information from G. N. Shepherd. G. N. Shepherd did buying and paying. Defendant never did any buying or paying. 8. Worked for Wright & Company, who sell general equipment. Had been there on numerous occasions. Knew G. N. Shepherd. Dealt with him only. Did not know defendant. Never saw him until today. Don't know who was running the place. 9. Live in LaGrange. Know G. N. Shepherd. He signed and paid membership fee in R. E. A. Line built. Defendant never had anything to do with it. All the bills paid by G. N. Shepherd. G. N. Shepherd owned real estate and made the contract. He claimed he owned the building. Witness No. 8, on redirect: Worked for Wright Brothers. Floyd Brothers are associated with us. Sell same kind of equipment, same customers. Was present when G. N. Shepherd paid cash to Mrs. Whipple, who works for Floyd Brothers, for balance on equipment for booths.

The following documents were introduced by the State: Deed executed May 3, 1940, recorded January 7, 1941, for one acre, more or less, to the defendant and Mrs. T. A. Ogletree. Bill of

sale for stove, dated March 4, 1941, signed by W. M. Shepherd. Retention-title contract for counters, $477.09, Brunswick-Balke-Collender Company, executed Feb. 4, 1941, signed by W. M. Shepherd.

The following documents were introduced by the defendant: Deed from Mrs. T. A. Ogletree and Wallace Shepherd (defendant) to T. A. Ogletree; executed January 22, 1941, recorded March 6, 1941; one acre of land, more or less. Retention-title contract for booths, Floyd Brothers, $663.65, executed January 28, 1941, recorded January 30, 1941, signed by G. N. Shepherd. Retention-title contract for counters, $477.09, executed January 27, 1941, signed by G. N. Shepherd. Four notes for booths, $68.94 each, payable to Floyd Brothers Inc., dated February 15, 1941, signed by G. N. Shepherd. Retention-title contract to American Service Company, for ice chest, dated March 5, 1941, signed by G. N. Shepherd. Application for membership in, and electric service from, Troup Electric Membership Corporation, dated April 7, 1941, signed by G. N. Shepherd. Salesman credit report of Grady Shepherd and County-Line Club, by E. L. Jenkins for Swift & Company, dated February 18, 1941. Three receipts from Citizens & Southern Bank of LaGrange, loan and discount Department, dated May 10, April 10, and August 10, 1941, showing payment by G. N. Shepherd to Asker-Trippe Company and Dixie Butance Gas Company.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*

#### ON MOTION FOR REHEARING.

GARDNER, J. The evidence was exceedingly weak, nevertheless sufficient to sustain the verdict. The penalty is severe, although within the provisions of the law. This being true, and there being no error in the trial demanding a reversal, this court is without authority to do other than deny a rehearing.

*Rehearing denied. Broyles, C. J., and MacIntyre, J., concur.*